IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:14cv1112-MHT |
| | ) | (WO) |
| 2014 MERCEDES-BENZ | ) | |
| GL350BLT, VIN: | ) | |
| 4JGDF2EE1EA411100, with all | ) | |
| appurtenances and | ) | |
| attachments thereon, | ) | |
| | ) | |
| Defendant; | ) | |
| | ) | |
| NGHIA LE, | ) | |
| | ) | |
| Claimant. | ) | |

OPINION

In this case, the government filed a complaint for
civil forfeiture of the defendant 2014 Mercedes-Benz
GL350BLT automobile pursuant to the Civil Asset
Forfeiture Reform Act (CAFRA), 18 U.S.C. §§ 981-87.
The government seized the car from its purchaser, Nghia
Le, and he has made a claim for the car. The court has
jurisdiction under 28 U.S.C. § 1345 (action commenced

by the United States) and 28 U.S.C. § 1355(a) (action for forfeiture).  The court has <u>in rem</u> jurisdiction over the vehicle under 28 U.S.C. § 1355(b).

Now pending before the court are claimant Le's motion to dismiss and motion for return of property. Le argues that the government filed its civil complaint too late.  The dismissal motion will be treated and granted as a motion for summary judgment, and the return-of-property motion will be granted.


## I. BACKGROUND

Claimant Le bought defendant Mercedes-Benz from a Mercedes-Benz dealer in Dothan, Alabama.  Shortly after he purchased the vehicle, the government seized it as part of an investigation.  The government alleges that Le planned to export the vehicle for profit in violation of a "no-export" agreement that he signed with the dealer at the time of purchase.

After the United States Secret Service seized the vehicle and gave Le notice of the seizure, Le filed an

2

administrative claim to the vehicle with the Secret Service as required by 18 U.S.C. § 983(a)(2). Le sent his claim to the agency's Communications Center in Washington, D.C., at the address the agency had provided him to submit any claim-related documents. He sent the claim by an overnight FedEx courier, and it arrived the next day, July 25, 2014. The parties agree that Le's claim was timely filed.

Four days later, Le's claim reached the Asset Forfeiture Division. As the government explains, all incoming mail addressed to the Secret Service's offices in Washington, D.C. is first processed through a remote delivery site for security screening. From there, the mail is sent on to the Communications Center at the headquarters building, where it is sorted for internal distribution. After being delivered to the appropriate department, an employee opens and date-stamps the mail, then forwards it to the reviewing official. It is not uncommon for this process to take several days. When

3

Le's claim finally reached the Asset Forfeiture Division, it was stamped July 29, 2014.

On October 24, 2014--91 days after Le's claim had first arrived at the Secret Service's remote mail-processing center--the government initiated this civil in rem forfeiture action, pursuant to 18 U.S.C. § 981(a)(1)(C).  By statute, any civil forfeiture complaint must be filed within 90 days after a claim is received.  18 U.S.C. § 983(a)(3)(A).  Thus, as Le argues, when the government filed its complaint, the statutory deadline for this complaint had already passed.

The government does not contest that it filed its complaint 91 days after Le's claim was received by the mailroom.  As the government explains, it calculated the statutory period from the date stamped on the claim, and it was not aware that this date might be different from the date the claim was first received by the agency.  It also was not aware that the claim in fact had been received at the remote mail processing

4

center several days earlier, until that fact was brought to its attention by Le's counsel.   As the government's counsel represented to the court, only after it had filed its complaint did it learn that the Secret Service's standard protocol is to date-stamp forfeiture claims when they are received by the Asset Forfeiture Division, not on the date they are received in the mailroom.

Le therefore filed a motion to dismiss, arguing that the government's complaint was untimely and that the vehicle therefore must be returned to him.   The government responds with two arguments: first, that the court should construe Le's filing date as the date his claim reached the Asset Forfeiture Division, which would put the filing of its complaint within the 90-day time limit; and, second, in the alterative, that the court should equitably toll the 90-day filing period by one day.

## II. VEHICLE FOR RELIEF AND STANDARD OF REVIEW

Though Le does not specify the procedural basis for his motion to dismiss, the court construes it as a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the court must "limit[] its consideration to the pleadings and exhibits attached thereto."  Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation and internal quotation marks omitted).  If the parties present evidence outside the pleadings, and if the court considers that evidence, then the Rule 12(b)(6) motion must be "converted into a summary judgment motion necessitating all the procedural safeguards of Rule 56," including notice to the parties.  Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984); see also Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment

6

under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  "The purpose of this requirement is to make certain that the parties are aware of the conversion and have an opportunity to present documents and arguments for and against the granting of summary judgment."  Prop. Mgmt. & Invs., Inc. v. Lewis, 752 F.2d 599, 605 (11th Cir. 1985).

However, the notice requirement is excused "when the parties are aware of the court's intent to consider matters outside the record and have presented all the materials and arguments they would have if proper notice had been given."  Starship Enters. of Atlanta, Inc. v. Coweta County, Ga., 708 F.3d 1243, 1253 n.13 (11th Cir. 2013) (internal quotation marks omitted).

Here, both the parties have attached exhibits to their motion-to-dismiss briefing, which the court has considered in rendering its decision.  The court has also taken into consideration various representations made by the parties during an on-the-record conference

call.  Because it has considered evidence outside the pleadings, the court now converts Le's motion to dismiss into a motion for summary judgment.

The parties were given notice that the court intended to do so on a conference call held on the record on January 22, 2016; counsel for both parties consented and waived the opportunity to submit additional argument and evidence.

Under the summary-judgment standard, the court views the admissible evidence in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court therefore adopts that standard here.

8

### III. DISCUSSION

Because this case turns on the court's interpretation of the procedural rules for civil forfeiture proceedings set forth under the Civil Asset Forfeiture Reform Act or CAFRA, the court begins with a survey of the relevant statutory language.

Under CAFRA, "[a]ny person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure." 18 U.S.C. § 983(a)(2)(A). This claim must be filed within "the deadline set forth in the personal notice letter (which deadline may not be earlier than 35 days after the date the letter is mailed)." 18 U.S.C. § 983(a)(2)(B). "Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture ..., except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties." 18 U.S.C. § 983(a)(3)(A).

The government does not argue that it made such a request to the court to extend the filing period for good cause. Moreover, courts have consistently held that an extension must be requested before the complaint deadline has elapsed, and that retroactive extensions are not permitted. See United States v. Funds from Fifth Third Bank Account, 2013 WL 5914101, at *9 (E.D. Mich. Nov. 4, 2013) (Cox. J.) ("Given the narrow language used [in § 983(a)(3)(A)], this Court concludes that the Government has to seek the extension before the limitations period passes and that it cannot seek a 'retroactive extension.'"); see also United States v. One 1991 Ford Mustang LX, 909 F. Supp. 831, 834 (D. Colo. 1996) (Kane, J.) (same); United States v. 1986 Ford Bronco, 782 F. Supp. 1543, 1546 (S.D. Fla. 1992) (Garber, J.) (same); United States v. One White 1987 Tempest Sport Boat, 726 F. Supp. 7, 9 (D. Mass.

1989) (Tauro, J.) (same).[1]   Some of these courts have
also noted that the legislative history of the
extension provision makes clear that it was intended to
apply to "situations in which the filing of the
complaint within the 90 day deadline might interfere
with an ongoing criminal investigation, or endanger
witnesses or undercover operations"--all situations
which would arise in advance of the deadline--and not

---

1. Although courts have focused on the text of
§ 983(a)(3)(A) alone, the next, related subparagraph is
perhaps even more instructive.  Section 983(a)(3)(B)
states that, "If the Government does not (i) file a
complaint for forfeiture or return the property, in
accordance with subparagraph (A); or (ii) before the
time for filing a complaint has expired [initiate
criminal forfeiture proceedings,] the Government shall
promptly release the property pursuant to regulations
promulgated by the Attorney General, and may not take
any further action to effect the civil forfeiture of
such property ...."  (Emphases added.)  This provision
makes plain that the government's right to effect
forfeiture is immediately and permanently cut off if it
fails timely to act (in any of a variety of ways) or
seek an extension.  Permitting retroactive extensions
would gut this limitation; indeed, even the act of
requesting a retroactive extension is arguably
impermissible, because it is "further action" to effect
the forfeiture.

designed to excuse a "good faith mistake."   Funds from Fifth Third Bank Account, 2013 WL 5914101, at *9 (citations omitted).   In sum, the statute would not allow an extension request at this juncture.

"If the government does not ... file a complaint for forfeiture" in accordance with the 90-day rule, and it does not obtain a criminal indictment before the time for filing a complaint has expired, "the Government shall promptly release the property ... and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense."   18 U.S.C. § 983(a)(3)(B).

The parties agree that the claimant's filing date triggers the start of the government's statutory period.   See 18 U.S.C. § 983(a)(3)(A) ("Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture ....").   In other words, the date that the claim is "filed" for the purposes of meeting the claimant's 35-day deadline is the same date that the government's 90-day period

12

begins to run. Therefore, the court's first step in this dispute is to determine when the claim was properly filed by the claimant: when the claim was first received in the mail room of the designated agency or when the claim was received by the agency's Asset Forfeiture Division. If it is determined that the government's complaint was untimely filed, the next step will be to decide whether to equitably toll the deadline and allow the government to file its complaint one day late.

## A. Statutory History

CAFRA was enacted in 2000 as part of "a reaction to the perception that there was some inequity in imposing strict deadlines and sanctions on property owners contesting civil forfeiture actions, while not imposing similar deadlines and sanctions on the government. The logic was that if property owners were required to file claims within a fixed period of time and were made to suffer consequences for failing to do so, the

13

government should face deadlines and suffer consequences as well." United States v. $ 229,850.00 in U.S. Currency, 50 F. Supp. 3d 1171, 1176 (D. Ariz. 2014) (Pyle, J.) (quoting Stefan D. Cassella, "The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties," 27 J. Legis. 97, 122-25 (2001)); see also United States v. One 2007 Harley Davidson Street Glide Motorcycle, 982 F. Supp. 2d 634, 640-41 (D. Md. 2013) (Williams, J.) ("In mandating that the United States file forfeiture complaints within the specified amount of time, Congress effectively determined that the interest in apprising claimants of the alleged basis of the forfeiture and expeditiously processing forfeiture complaints outweighed the loss of dismissing potentially meritorious claims for untimely filing. This is hardly surprising considering that forfeiture is a harsh remedy that the law generally disfavors.").

14

District courts, of course, may "insist" on a claimant's "strict compliance" with the forfeiture rules, though they do have discretion to extend a claimant's filing period. United States v. $ 12,126.00 in U.S. Currency, 337 F. App'x 818, 819 (11th Cir. 2009). By the same token, "[f]orfeitures are not favored in the law; strict compliance with the letter of the law by those seeking forfeiture"--that is, the government--"must be required." United States v. $ 38,000.00 in U.S. Currency, 816 F.2d 1538, 1547 (11th Cir. 1987). "If anything, the burden on the government to adhere to the procedural rules [when it seeks forfeiture] should be heavier than on claimants." Id.

As such, the 90-day deadline for the government to file a complaint is mandatory and should be strictly construed against the government. See United States v. Wilson, 699 F.3d 789, 795 (4th Cir. 2012) (explaining that § 983(a)(3) contains a "mandatory limitation requiring the government's prosecutor to file its complaint not later than 90 days after a claim has been

15

filed"); United States v. Ritchie, 342 F.3d 903, 910 (9th Cir. 2003) ("Because forfeitures are disfavored, forfeiture laws and their notice provisions are strictly construed against the government.") (citation and internal quotation marks omitted); $ 229,850.00, 50 F. Supp. 3d at 1176 ("The 90-day time limit is mandatory and the requirement that the Government release the seized property where it fails to file a timely complaint for forfeiture is the 'sanction' that CAFRA imposes for such failure.") (citation and internal quotation marks omitted).

Courts have dismissed cases when the government has missed the filing deadline even by a day or two. See, e.g., One 2007 Harley Davidson, 982 F. Supp. 2d 634 (dismissing complaint filed one day late); United States v. $ 80,891.25 in U.S. Currency, 2011 WL 6400420 (S.D. Ga. Dec. 19, 2011) (Edenfield, J.) (dismissing complaint filed two days late); United States v. Funds in the Amount of $ 314,900.00, 1:05-cv-3012 (N.D. Ill. Dec. 21, 2005) (Gettleman, J.) (doc. no. 26)

16

(dismissing complaint filed one day late), reconsideration denied, 2006 WL 794733; but see United States v. $ 39,480.00 in U.S. Currency, 190 F. Supp. 2d 929 (W.D. Tex. 2002) (Furgeson, J.) (excusing one-day delay for good cause, because the government incorrectly date-stamped the claim).

## B. Timeliness of Filing

As discussed above, the government has conceded that it filed its complaint 91 days after Le's claim was received by the mail room. It argues, however, that its complaint was not untimely because Le's claim should not be considered properly filed until received by an agent within the Asset Forfeiture Division.

As a threshold matter, the court rejects the government's argument on due-process grounds. The crux of this case, of course, is a dispute about the government's 90-day filing period. But the court's decision has serious implications for the claimant's ability to meet his own 35-day deadline: as discussed

17

above, a claimant's claim is filed on the same date that the government's period begins to run. Yet, if a claim is not properly filed the date it is received by the agency, it would be impossible for a claimant to ensure that his claim was timely filed within his 35-day statutory deadline. In other words, the government would have unfettered discretion over the administrative viability of forfeiture claims against it. It is one thing for Congress to set a strict statutory deadline. It is quite another for a government agency to be able to prevent a claimant from controlling his or her ability to meet that deadline.

As seen in this case, a claim may spend several days en route to the forfeiture department of an agency after being received and processed by the mail room. Here, for example, the claim was not received by the Asset Forfeiture Division until four days after it was delivered to the mail-processing center. In light of the pace of the government's mail-distribution

procedure, the above concern becomes even more troubling.

Admittedly, the relevant statutory language could be construed to support the government's argument: the statute provides that "filing" under the statute means filing "with the appropriate official." 18 U.S.C. § 983(a)(2)(A); see also 28 C.F.R. § 8.10 (same language).[2] Under a narrow reading, this could mean that a claim is filed only when it is received by an agent within the Asset Forfeiture Division who has power over the claim, rather than by an agent within the Secret Service more generally. And this is the interpretation that the government asks the court to adopt.

By the government's logic, timely filing of administrative claims would depend on sheer luck, or

_____

2. Because the government does not contend that the court should consider, much less defer to, the agency's own regulatory scheme, the court does not pursue that avenue.

the mercy of the government's internal bureaucracy.
See Beck v. United States, 2011 WL 862952, at *4 (D.
Md. Mar. 10, 2011) (Nickerson, J.) ("[A] requirement
that filing occurs only when a claim reaches 'the
appropriate official' would wrest from claimants all
control over timely filing, as they could only hope
that whatever mailroom procedures the agency has in
place would get their claim to the right person by the
deadline."). Indeed, a simple analogy shows the folly
in the government's argument: no one would dispute that
the government's complaint is filed the day it is
received in the court clerk's office, not by the judge
who decides the issue.[3]

Because such a strict reading of this statute
appears to violate fundamental notions of procedural
fairness, the court rejects it. "[I]f an otherwise

_____

3. Perhaps for this reason, the government's
counsel admitted that its argument, taken to its
logical conclusion, becomes "illogical." Dec. 31, 2014
Hearing Tr. (doc. no. 27), at 9:17-18.

acceptable construction of a statute would raise
serious constitutional problems, and where an
alternative interpretation is 'fairly possible,'
[courts] are obligated to construe the statute to avoid
such problems." I.N.S. v. St. Cyr, 533 U.S. 289, 300
(2001) (citations omitted); see also Clark v. Martinez,
543 U.S. 371, 381 (2005) ("[T]he canon of
constitutional avoidance ... is a tool for choosing
between competing plausible interpretations of a
statutory text, resting on the reasonable presumption
that Congress did not intend the alternative which
raises serious constitutional doubts.").

The government relies on a district court decision
which reasoned that a claim is "filed" when it reaches
a "proper official" within the forfeiture division, not
when it arrives in the mail room, because "the remote
delivery site merely screens all incoming mail packages
for contamination; it does not accept or review
incoming claims within those packages, nor does it
likely even read, identify, or otherwise deal with such

claims." United States v. One GMC Yukon Denali, 2003 WL 27177023, at *4 (C.D. Cal. Dec. 4, 2003) (Baird, J.). For support, this case relies on a 1916 Supreme Court decision, United States v. Lombardo, 241 U.S. 73 (1916), which held that the filing date for a document is the date of receipt by the government agency, not the date of mailing by the civilian party. Yet this proposition is inapposite to the question at hand here. Lombardo does not support the decision in One GMC Yukon Denali, because Lombardo decided only that a document is filed upon receipt rather than on dispatch; the Lombardo Court was not confronted with, and therefore cannot have decided, the question whether a document is filed on the date it is received at the address at which an official receives mail or only after it has been internally forwarded from that address to the official herself. See Lombardo, 241 U.S. at 76 ("Filing ... is not complete until the document is delivered and received. 'Shall file' means to deliver to the office, and not send through the United States

mails.") (citation omitted).  The court finds One GMC
Yukon Denali unpersuasive.

Recently, a district court in Arizona disagreed
with One GMC Yukon Denali, reasoning that a "claim is
filed when it is received by the mailroom of the agency
where the claimant is directed to send the claim,"
because "the government ought not be able to manipulate
the deadlines to evade the delay reforms enacted by
CAFRA."  $ 229,850.00, 50 F. Supp. 3d at 1176, 1178
(internal quotation marks omitted); see also Funds from
Fifth Third Bank Account, 2013 WL 5914101, at *7
(finding that claim is "filed" when received by agency
because to find otherwise would "as a practical matter,
eviscerate the 90-day limitation period imposed on the
Government"); $ 314,900.00, 1:05-cv-3012 (N.D. Ill.
Dec. 21, 2005) (doc. no. 26, at 5) ("[Claimant] was
directed by DEA to file his claim with the 'Forfeiture
Counsel.' ... [Claimaint's] claim was received at that
address. ... That is all the statute requires, and that
is when the ninety days began to run.").

23

While no binding authority within the Eleventh Circuit squarely decides the issue, the Court of Appeals has recognized long-held precedent that forfeiture rules must be strictly construed against the government.  See $ 38,000.00, 816 F.2d at 1547 (citing United States v. One 1936 Model Ford V-8 De Luxe Coach, 307 U.S. 219, 226 (1939)).  For the same reason that the Eleventh Circuit has held that courts may hold claimants to strict deadlines, see $ 12,126.00, 337 F. App'x at 819, so may courts hold the government.

Therefore, Le's claim was filed the date it was received by the Secret Service at the address to which the Secret Service directed it be sent.  The 90-day filing period began on July 25, 2014.  The government's complaint is therefore untimely, because it was filed 91 days later.

## C. Equitable Tolling

Because the court has found that the government's complaint is untimely, it must next decide whether the

24

deadline should be equitably tolled by one day or whether summary judgment is due for the claimant.

"Principles of equitable tolling are read into every federal statute of limitation," but, because "equitable tolling is a matter of congressional prerogative," equitable tolling should not be applied when Congress has clearly spoken otherwise. <u>Cook v. Deltona Corp.</u>, 753 F.2d 1552, 1562 (11th Cir. 1985).

Here, because no part of § 983(a)(3)(A) expressly disallows equitable tolling, and because the statute is procedural, rather than jurisdictional, it is within the court's discretionary authority to toll the statute. <u>See</u> <u>United States v. Vazquez</u>, 760 F.3d 193, 198 (2nd Cir. 2014) ("[T]he provisions of § 983 are procedural rules for pursuing the forfeiture of seized assets, not conditions of subject matter jurisdiction.") (internal quotation marks omitted); <u>Holland v. Florida</u>, 560 U.S. 631, 645-646 (2010) ("[A] nonjurisdictional federal statute of limitations is normally subject to a rebuttable presumption in <u>favor</u>

25

of equitable tolling.") (internal quotation marks omitted).

A party is generally entitled to equitable tolling if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented the timely filing." Holland, 560 U.S. at 649 (internal quotation marks omitted). Equitable powers such as tolling allow a court to provide relief on a "case-by-case basis" if "specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." Id. at 650.

Because "[e]quitable tolling is an extraordinary remedy" to correct injustices in extraordinary circumstances, it is "typically applied sparingly." Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000). Attorney negligence or other "garden variety claim of excusable neglect" does not justify equitable tolling, nor does a "miscalculation that leads a lawyer to miss

a filing deadline." Holland, 560 U.S. at 651 (internal quotation marks omitted).

To support its request, the government relies on $ 39,480, 190 F. Supp. 2d 929. In that case, the government agency had forwarded its counsel a copy of the claim with an incorrect date stamp, even though the agency's copy had the correct date stamp. The government filed its civil forfeiture complaint one day late, and the court tolled the statute for equitable reasons. As the court explained, the government "acted diligently and with good faith in prosecuting the instant case," and

> "the one-day delay does not prejudice [the claimant] in any meaningful way.... She will still have her day in court.... In contrast to the lack of prejudice to [the claimant], dismissal of the Government's complaint would have a draconian effect on the Government's case."

Id. at 932-33. In a similar case, $ 229,850.00, the district court equitably tolled the government's filing deadline, noting the government's reliance on "unsettled" case law on the filing issue--that is, the

question of whether a claim is properly "filed" when it reaches the mailroom or the agency's forfeiture department--constituted an "extraordinary circumstance" that favored equitable tolling when the government "diligently calculated the statutory deadline for filing relying on the date-stamp." 50 F. Supp. 3d at 1184-85. Finding that the claimant had not shown that the government's one-day delay was "significant or prejudicial," the court decided the case on the merits. Id. at 1185.

The government here argues that the statute should be tolled because it, too, has acted in good faith. As it explains, government counsel merely relied on the date that was stamped on the claim form, without knowledge that stamp did not reflect the date the claim was in fact received by the agency.

The court is not persuaded by the arguments advanced by the courts cited above. First, to merit equitable tolling, a party need not simply "diligently calculate[]" the number of days between the beginning

28

and the end of a filing period. Id. at 1184.
Equitable tolling does not hinge on a party's
mathematical skill. Instead, the law requires that, to
merit equitable tolling, a party must have "pursu[ed]
his rights diligently" despite an extraordinary
obstacle. And "when faced with mandatory deadlines,
the requirement of due diligence may obligate attorneys
to go beyond standard practice to ensure that they
respect the deadlines." One 2007 Harley Davidson, 982
F. Supp. 2d at 640. Holland, 560 U.S. at 649.
"Equitable tolling is appropriate when a movant
untimely files because of extraordinary circumstances
that are both beyond his control and unavoidable even
with diligence." Sandvik v. United States, 177 F.3d
1269, 1271 (11th Cir. 1999).

Here, the government has conceded that its
mistake--even if made in good-faith--was entirely of
its own making. Had the Secret Service developed an
accurate method for date-stamping claims and
communicating those practices to its counsel, the

government would have filed its complaint on time.  Its failure to do so sounds more in "a garden variety claim of excusable neglect" than an "extraordinary circumstance." Holland, 560 U.S. at 649, 651.

Indeed, the circumstance here was ordinary, not extraordinary, for the evidence reflects that the agency had a protocol or routine of not stamping claims as filed until they have been received in a particular department or division or by a particular type of agent, rather than received merely by the agency.  And pursuant to that policy, Le's claim was received by the mail room, processed, sent to the Asset Forfeiture Division, and only then date-stamped.  There is no allegation that Le engaged in wrongful conduct.  The government does not contend that it was relying on conflicting case law to determine the start date of its filing period, such that unsettled precedent stood in the way of its timely filing.  The government's good-faith calculation does not excuse its failure to

exercise due diligence to record properly the filing of Le's claim on the date it was received by the agency.

And the recurrence of similar circumstances in case law shows that the government should not have been caught by surprise. Indeed, other courts have commented that this "recurring problem" "has arisen with some frequency in recent years," and "could be eliminated by minor procedural improvements either at the agency level or at the U.S. Attorney's Office Level." United States v. $ 34,769.49, More or Less, in U.S. Currency, 2015 WL 1643582, at *7 n.10 (S.D. Ala. Apr. 13, 2015) (Steele, J.).

Finally, the court rejects the argument that it should equitably toll the statute because the claimant was not prejudiced by the one-day delay. Forfeitures are a "harsh penalty" for individuals deprived of their personal property. United States v. $ 125,938.62, 370 F.3d 1325, 1329 (11th Cir. 2004). And, because "[f]orfeitures are not favored in the law[,] strict compliance with the letter of the law by those seeking

forfeiture must be required." $ 38,000.00, 816 F.2d at 1547.  Moreover, CAFRA was enacted, at least in part, to reform forfeiture practices and hold the government to a strict statutory period for filing complaints.

Undoubtedly, if Le had made a similar error, the government would hold him to the same standard. Indeed, when questioned by the court on this point, the government explained that when a claimant's claim is filed outside the statutory period, the government denies the claim as untimely and proceeds with administrative forfeiture, as provided under the statute.  The court will require of the government the same strict compliance with the law as it requires of its people.  Simple subjective belief that a filing was timely should no more excuse the government's nonfeasance than it should excuse a claimant's.  The court will not grant equitable relief.

* * *

Accordingly, pursuant to Rule 12(b)(6), Le's motion to dismiss will be treated as a motion for summary judgment, and, pursuant to 18 U.S.C. § 983(a)(3)(B), that motion will be granted and summary judgment will be entered in favor of Le.   Also, pursuant to § 983(a)(3)(B), Le's motion for return of property will be granted, and the government will be required to release promptly the Mercedes-Benz vehicle to Le.

An appropriate judgment will be entered.

DONE, this the 18th day of February, 2016.

____/s/ Myron H. Thompson____
**UNITED STATES DISTRICT JUDGE**